## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | **NO. 02-446-02** |
| **v.** | : | |
| | : | **CIVIL ACTION** |
| **FRANCISCO ZAVALA,** | : | **NO. 06-4047** |
| **a/k/a "Francisco Zavala Mendoza"** | : | |

### ORDER & MEMORANDUM

### ORDER

**AND NOW**, this 29th day of August, 2008, upon consideration of petitioner Francisco Zavala's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate and Set Aside Judgment of Conviction (Document No. 300, filed September 11, 2006); Government's Response in Opposition to Defendant's Motion Pursuant to 28 U.S.C. § 2255 (Document No. 302, filed September 28, 2006); Petitioners [sic] [*Pro Se*] Memorandum in Support of His Motion Under 28 U.S.C. § 2255 (Document No. 304, filed October 23, 2006); Government's Supplemental Response in Opposition to Defendant's Motion Pursuant to 28 U.S.C. § 2255 (Document No. 312, filed February 14, 2007); and Petitioner's [*Pro Se*] Amended Memorandum in Support of His § 2255 (Document No. 321, filed June 11, 2007), following an evidentiary hearing held on November 29, 2007 and May 12, 2008, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that petitioner Francisco Zavala's *pro se* Motion under 28 U.S.C. § 2255 to Vacate and Set Aside Judgment of Conviction is **DENIED**, except to the extent that it raises a claim of cruel and unusual punishment in violation of the Eighth Amendment and punishment without due process of law in violation of the Fourteenth Amendment for refusal of medical treatment and inadequate medical treatment.  The claim for refusal of medical treatment and inadequate medical treatment is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHERED ORDERED** that a certificate of appealability will not issue on the ground that petitioner has not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).

**MEMORANDUM**

## I.    BACKGROUND

On September 5, 2002, a grand jury in the Eastern District of Pennsylvania returned a three-count Superseding Indictment against petitioner Francisco Zavala, a/k/a Francisco Zavala-Mendoza, and two co-defendants.  Count One charged petitioner with conspiracy to distribute and to possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(viii), and 846.  Count Two charged petitioner with attempted possession with intent to distribute in excess of 500 grams of methamphetamine and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846, and 18 U.S.C. § 2.  Count Three charged petitioner with unlawful use of a communication facility, that is, the mail, in violation of 21 U.S.C. § 843(b).

The case was tried to a jury, beginning June 16, 2003.  On June 20, 2003, the jury found petitioner guilty of all three counts.  On December 5, 2003, the Court sentenced petitioner to 151 months pursuant to the then-mandatory United States Sentencing Guidelines.  Petitioner filed an appeal, contesting both the conviction and the sentence imposed.  See United States v. Zavala, 141 Fed. App'x 69, 71 (3d Cir. 2005) (unpublished opinion).  While the appeal was pending, the United States Supreme Court decided United States v. Booker, 543 U.S. 220 (2005), which rendered the United States Sentencing Guidelines advisory.  Thereafter, the Court of Appeals affirmed petitioner's judgment of conviction, vacated his sentence, and remanded the case to this Court for resentencing consistent with Booker.  United States v. Zavala, 141 Fed. App'x at 76.

The Court held a resentencing hearing on September 8, 2005.  Prior to the hearing, petitioner filed a motion for a downward departure on the ground that he had an extraordinary physical impairment.  At that hearing, the Court heard testimony from Dr. Ashok Patel, who was treating petitioner at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri.  (Tr. 9/8/05 18-20.)  Dr. Patel testified that petitioner was suffering from end-stage renal disease requiring four-hour long dialysis sessions, three times each week.  (Id. 21-22.)  Thereafter, petitioner testified about the severe deterioration of his health, beginning in 2003.  (Id. 32-38.)  Based on this evidence, the Court found that petitioner was suffering from an extraordinary medical condition.  (Id. 54-59.)  Pursuant to United States Sentencing Guideline § 5(h)(1.4),[1] the Court granted petitioner's motion for a downward departure, and reduced petitioner's original sentence of 151 months to the statutory mandatory minimum sentence of 120 months.  21 U.S.C. § 841(b)(1)(A)(viii).  (Id. 59-60.)  Under 21 U.S.C. § 841(b)(1)(A)(viii), the Court was precluded from sentencing petitioner to less than 120 months incarceration.

On September 11, 2006, petitioner filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate and Set Aside Judgment of Conviction.  Petitioner's motion raises a number of issues, which can be placed into four groups.

First, petitioner asserts two claims related to an alleged violation of his Miranda rights: (1) his conviction was obtained using a coerced confession in violation of the Fifth Amendment;

---

[1]

    United States Sentencing Guideline § 5(h)(1.4) states, in relevant part:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward . . . .

and (2) his trial counsel was ineffective for failing to file a motion to suppress his post-arrest statements obtained in violation of his <u>Miranda</u> rights or to object to the admission of the statements at trial.

Second, petitioner asserts three claims related to his co-defendant Michael Gonzalez: (1) his Fifth and Fourteenth Amendment rights were violated because the prosecution withheld evidence which would have been favorable to the defense, specifically, a proffer statement from Michael Gonzalez in which he admitted sole ownership of the methamphetamine package and stated that his plan did not include petitioner; (2) he was denied his right to cross-examine Michael Gonzalez, who was a fugitive at the time of trial, because the Government used him as a confidential informant; and (3) his trial counsel, Joyce Webb-Eubanks, was ineffective for failing to move to suppress Gonzalez's statements or to object to their introduction at trial.

Third, petitioner asserts two claims based on the evidence admitted at his trial: (1) his trial counsel, Joyce Webb-Eubanks, was ineffective in that she (a) did not seek to have the drug evidence seized from petitioner's vehicle at the time of his arrest tested by an independent laboratory to determine if the substance contained methamphetamine, and if so, what type, and (b) failed to require the Government to call the chemist who tested the methamphetamine as a witness, rather than stipulating to the testimony; and (2) his trial counsel was ineffective for failing to challenge the Government's drug, and non-drug, evidence by filing a motion to suppress or motion to dismiss.

Finally, petitioner asserts that he has suffered cruel and unusual punishment, in violation of the Eighth Amendment, and has been punished without due process of law, in violation of the Fourteenth Amendment, because medical personnel at the Federal Detention Center in

Philadelphia, Pennsylvania, refused him necessary medical treatment and, once treatment was provided, it was inadequate.[2]  (See Pet'r's Mot. Under § 2255.)

On April 5, 2007, the Court appointed Rocco C. Cipparone, Jr., Esquire, to represent petitioner.  An evidentiary hearing was held on November 29, 2007, and May 12, 2008, to address three issues raised by petitioner in his habeas motion: (1) whether petitioner was denied effective assistance of counsel because trial counsel did not move to suppress petitioner's post-arrest statement to law enforcement officers; (2) whether trial counsel was ineffective for failing to require the Government to call the chemist who tested the methamphetamine as a witness, rather than stipulating to the testimony; and, (3) whether trial counsel was ineffective for failing to have the substance at issue in the case tested by an independent laboratory.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Federal Habeas Provisions

A federal prisoner is procedurally barred from collaterally attacking his sentence under § 2255 insofar as the attack is based upon issues that could have been, but were not, raised on direct appeal.  See United States v. Frady, 456 U.S. 152, 165 (1982).  Claims of ineffective assistance of counsel are, however, an exception to this general rule.  Such claims are generally eschewed on direct appeal in this Circuit, with the preference being that they be raised for the first time in § 2255 proceedings.  See United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996).

---

[2]  Petitioner's medical treatment claim is a conditions of confinement claim, which is not cognizable in a habeas motion.  Lee v. Williamson, 2007 WL 2903238, at *2 (M.D. Pa. September 28, 2007) (citing Preiser v. Rodriguez, 411 U.S. 475, 484 (1973)).  A Bivens action is the appropriate vehicle for presenting this claim.  See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

**B.** **Ineffective Assistance of Counsel - Strickland**

Several of petitioner's claims are based upon the theory of ineffective assistance of counsel.  "Strickland v. Washington supplies the standard for addressing a claim of ineffective assistance of counsel."  United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland v. Washington, 466 U.S. 668 (1984)).  This standard requires a familiar two-part inquiry.  First, "the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.  "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense."  Id. at 687.  The measure for counsel's performance under the first prong of Strickland is "reasonableness under prevailing professional norms."  Id. at 688.  As to the second prong of Strickland, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

**III.** **DISCUSSION**

Petitioner's numerous claims in his habeas motion can be placed into three groups.  First, petitioner asserts two claims related to an alleged violation of his Miranda rights.  Next, petitioner asserts three claims related to his co-defendant Michael Gonzalez.  Finally, petitioner asserts two claims based upon the evidence admitted at his trial.  The Court will examine each group of claims in turn.

A.    *Miranda* **Claims**

1.    **Violation of Miranda Rights**

Petitioner argues that his conviction was obtained using a coerced confession in violation

of the Fifth Amendment.  (Mot. Under 28 U.S.C. § 2255 at 2-3 ("Mot.")).  Specifically, he states

that he was only "partially" Mirandized by Postal Inspector Walter Nowelski following his arrest

and that he only confessed to Agent Nowelski and then Immigration and Naturalization Service

Special Agent Michele Kennedy, the two law enforcement agents present for his immediate

post-arrest interrogation, after they coerced him into doing so.  (Pet'r's Mem. of Law in Support

of Mot. 7-8.)  According to petitioner, the agents continued to question him after he stated "I do

not have anything to say to you guys" and "I want a lawyer!"  (Id.)  Petitioner further alleges

that, during this continued questioning, Agent Kennedy called him a "macho man" and told him

he was facing "twenty to thirty years."  (Id.)

The Court heard testimony regarding petitioner's Miranda allegations at the evidentiary

hearing held in relation to petitioner's § 2255 motion on November 29, 2007 and May 12, 2008.

Petitioner testified that although he was read his Miranda rights while sitting in the back seat of

an SUV at the scene of his arrest, the law enforcement agents improperly continued to question

him after he invoked those rights and stated that he did not want to speak to them and wanted an

attorney.  (Tr. 11/29/07 39-40.)

Special Agent Michele Kennedy testified to a different version of the events surrounding

petitioner's statement in the SUV.  Special Agent Kennedy explained that she was in the SUV of

Detective King (Philadelphia Police Department) at the time of petitioner's arrest.  Also present

in the SUV was Postal Inspector Walter Nowelski.  According to Special Agent Kennedy, once

7

petitioner was placed in the SUV, she read him his <u>Miranda</u> rights, with Postal Inspector

Nowelski as a witness.  (Tr. 5/12/08 10-11.)  Thereafter, petitioner stated that he understood his

rights and that he was willing to waive those rights and speak to the law enforcement agents.

(<u>Id.</u> 11.)  He then proceeded to tell the agents (1) that he asked "Miguelito" to accept the package

and was going to pay him $200 to do so, (2) that he, petitioner, knew that the package contained

methamphetamine, and (3) that he didn't want to get anyone else in trouble.  (<u>Id.</u>)

Special Agent Kennedy testified that petitioner was handcuffed and sitting in the

backseat of the SUV throughout the five to ten minute interview and that she was in the front

passenger seat while Inspector Nowelski was in the driver's seat.  (<u>Id.</u> 12.)  During the interview,

petitioner never said that "he had nothing to say to them" or that "he wanted to see a lawyer."

(<u>Id.</u>)  Neither she nor Inspector Nowelski ever called petitioner a "macho man," nor told him that

he was facing "20-30 years in prison."  (<u>Id.</u> 12-13.)  It was Special Agent Kennedy's testimony

that she did tell petitioner that he had some "serious problems" and needed to do the right thing

and help himself out by talking to them and that he was facing "serious time." (<u>Id.</u> 13, 20.)  She

explained that these statements were in response to petitioner's statement that he did not want to

get anyone else in trouble and were designed to get him to implicate others, if possible.  (<u>Id.</u> 20.)

On cross-examination, Special Agent Kennedy admitted that she and Inspector Nowelski

did not present Zavala with a written waiver of rights form.  (<u>Id.</u> 13.)  She explained that it was

standard procedure just to obtain an oral waiver of rights in a "street setting when time is of the

essence."  (<u>Id.</u> 16.)

Postal Inspector Walter Nowelski also testified about the circumstances surrounding

petitioner's statement in the SUV.  In contrast to Special Agent Kennedy, Inspector Nowelski

testified that he and Special Agent Kennedy were seated in the back seat of the SUV on either side of petitioner.  (Id. 24.)  He agreed, however, with Special Agent Kennedy's account of the reading of Miranda rights to petitioner and his waiver of those rights.  (Id. 24-26.)  He also agreed with Special Agent Kennedy's account of what petitioner told them - (1) that he asked "Miguelito" to accept the package and was going to pay him $200 to do so, (2) that he, petitioner, knew that the package contained methamphetamine, and (3) that he did not want to get anyone else in trouble.  (Id. 26-27.)  Inspector Nowelski, like Special Agent Kennedy, testified that neither agent ever called petitioner a "macho man" or told him that he was facing "20-30 years in jail."  (Id. 27.)  He also stated that petitioner never said that "he had nothing to say to them" or that "he wanted to see a lawyer."  (Id.)

On cross-examination, Inspector Nowelski testified, contrary to Special Agent Kennedy, that neither agent ever stated that petitioner was facing a significant period of jail time.  (Id. 28-29.)  Like Special Agent Kennedy, he testified that no written waiver of Miranda rights was sought in the SUV.  (Id. 29-31.)

The Court credits the testimony of the Inspector Nowelski and Special Agent Kennedy, and not that of petitioner, regarding the interactions between the law enforcement agents and petitioner in Police Officer King's SUV following petitioner's arrest.  The minor inconsistencies between Inspector Nowelski's testimony and that of Special Agent Kennedy, for example concerning where the agents were seated in the SUV, are not sufficiently significant to undermine their credibility.  The agents' testimony was consistent on all material points: petitioner was read his Miranda rights prior to questioning; petitioner never invoked his right to

9

remain silent; and neither agent made any coercive statements to petitioner.  (Tr. 5/12/07 11-13, 20, 24-29.)

The statements made by Special Agent Kennedy to petitioner that he had some "serious problems" and needed to do the right thing and help himself out by talking to them, and that he was facing "serious time," (Tr. 5/12/08 13, 20), did not render petitioner's confession involuntary.  In <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986), the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."  In rejecting the defendant's coercion argument, the Court in <u>Connelly</u> noted that the cases in which courts had previously found involuntariness all "focused upon the crucial element of police overreaching."  <u>Id.</u> at 163.  Examples of such overreaching cited by that Court involved extreme police wrongdoing, such as interrogation of a suspect "for over 18 hours without food or sleep" (<u>Greenwald v. Wisconsin</u>, 390 U.S. 519 (1968)); incommunicado interrogation of a suspect "in a closed cell without windows, limited food, and coercive tactics" (<u>Davis v. North Carolina</u>, 384 U.S. 737 (1966)); and interrogation of a suspect by "relays of officers for 36 hours without an opportunity for sleep" (<u>Ashcraft v. Tennessee</u>, 322 U.S. 143 (1944)).  <u>Connelly</u>, 479 U.S. at 163 n.1.

As the Third Circuit has stated, although it is possible to find involuntariness based on psychological coercion, "it is generally recognized that the police may use some psychological tactics in eliciting a statement from a suspect."  <u>Miller v. Fenton</u>, 796 F.2d 598, 603-05 (3d Cir. 1986).  "The question to be answered when such tactics are used is whether they 'were so manipulative or coercive that they deprived [the suspect] of his ability to make an unconstrained,

autonomous decision to confess.'" United States v. Griggie, 105 Fed. App'x 431, 435 (3d Cir.

2004) (citing Miller, 796 F.2d at 605). However, an investigator may "play on the suspect's

sympathies or explain that honesty might be the best policy for a criminal who hopes for

leniency from the state." Miller, 796 F.2d at 605 (citing Rachlin v. United States, 723 F.2d

1373, 1378 (8th Cir. 1983); United States v. Vera, 701 F.2d 1349, 1363-64 (11th Cir. 1983)).

The statements that Special Agent Kennedy made to petitioner - that he had some

"serious problems" and needed to do the right thing and help himself out by talking to them, and

that he was facing "serious time," (Tr. 5/12/08 13, 20), - fall within the permissible bounds of

psychological persuasion. These statements, informing petitioner of the possible repercussions

of conviction, were not "so manipulative and coercive that they deprived [petitioner] of his

ability to make an unconstrained, autonomous decision to confess." Miller, 796 F.3d at 605.

Thus, the Court concludes that petitioner was properly Mirandized and was not coerced into

giving a confession in violation of his Fifth Amendment rights.

### 2.    Ineffective Assistance of Counsel

Petitioner asserts in his § 2255 motion that his trial counsel was ineffective for failing to

file a motion to suppress his post-arrest statements obtained in violation of his Miranda rights or

to object to the admission of the statements at trial. (Mot. 6-7; Mem. of Law 8-9.) According to

petitioner, he told his trial counsel, Joyce Webb-Eubanks, Esquire, about "the circumstances

surrounding his false confession," and she took no action. (Mem. of Law 8; Tr. 11/29/07 37.)

Joyce Webb-Eubanks testified to a different version of what petitioner told her about his

interactions with Special Agent Kennedy and Inspector Nowelski in the SUV. According to Ms.

Webb-Eubanks, petitioner told her he admitted to the agents that he knew the package contained

methamphetamine and never told her that "he told the agents he had nothing to say and wanted

to speak to a lawyer." (Tr. 11/29/07 119, 135-36, 146.)  Ms. Webb-Eubanks admitted, however,

that petitioner must have told her that they called him a "macho man" in attempting to elicit a

statement because she used that phrase in cross-examining Special Agent Kennedy at trial.  (Tr.

11/29/07 151-53.)

      In order to succeed on an ineffective assistance of counsel claim, petitioner must show

two things.  First, "the defendant must show that counsel's performance was deficient," that is,

"that counsel's representation fell below an objective standard of reasonableness."  Strickland,

466 U.S. at 687-88.  "Second, the defendant must show that [counsel's] deficient performance

prejudiced the defense."  Id. at 687.

      As stated above, the Court concludes that his Miranda rights were not violated by

Inspector Nowelski and Special Agent Kennedy.  Thus, even assuming that trial counsel's

performance was deficient based on her failure to file a motion to suppress petitioner's post-

arrest statements, petitioner cannot show that he was prejudiced by this conduct.  Id. at 687.

Thus, petitioner's claim of ineffective assistance of counsel for failure to file a motion to

suppress his post-arrest statements, or to object to their admission at trial, is denied.

      Related to his Miranda claim, petitioner asserts that Ms. Webb-Eubanks also failed to

provide him with effective assistance of counsel at the time that he gave a proffer statement on

September 20, 2002.  Specifically, petitioner asserts that Ms. Webb-Eubanks "failed to be

present during the debriefing," and thus petitioner gave an "uncounseled confession," which in

turn, prevented him from being able to testify in his own defense.  (Pet'r's Mem. in Support 10.)

That argument appears to be based on the fact that the proffer agreement provided that if

petitioner testified contrary to what he said in the proffer, the proffer agreement could be used by the Government at his trial.  (Tr. 11/29/07 85.)

Ms. Webb-Eubanks testified to the contrary at the evidentiary hearing on November 29, 2007.  According to Ms. Webb-Eubanks, she was present for the proffer interview and counseled petitioner through the process.  (Tr. 11/29/07 123-24.)  The Court credits the testimony of Ms. Webb-Eubanks and not that of petitioner.  Thus, petitioner cannot succeed on this ineffective assistance of counsel claim.  Strickland, 466 U.S. at 687-88.

### B.     Gonzalez Claims

#### 1.     Withholding of Statements

Petitioner claims that his Fifth and Fourteenth Amendment rights were violated because the prosecution withheld evidence which would have been favorable to the defense.  (Mot. 3.)  Specifically, petitioner contends that Government counsel withheld a proffer statement from petitioner's co-defendant, Michael Gonzalez, in which he admitted sole ownership of the methamphetamine package and stated that "his plan did not include" petitioner.  (Id. 4.)

The Government refutes this charge by noting that petitioner's trial counsel, Ms. Webb-Eubanks, was provided with the proffer statement of Michael Gonzalez and used it at trial, offering it as an exhibit.  (Gov't's Response in Opp. 3 (citing Tr. 6/18/03 156-59)).  Ms. Webb-Eubanks also referred to the Gonzalez proffer statement during closing argument, asserting that Gonzalez's statement evidenced petitioner's innocence.  (Tr. 6/19/03 34.)

The use of the Gonzalez proffer statement by petitioner's trial counsel renders untenable petitioner's claim that his Fifth and Fourteenth Amendment rights were violated by the

withholding of this statement from the defense.  To the extent petitioner's habeas motion relies upon this alleged violation of his constitutional rights, it is denied.

### 2.        Denial of Right to Cross-Examine

Petitioner asserts that he was denied his right to cross-examine Michael Gonzalez, who was a fugitive at the time of trial, because the Government used him as a confidential informant. (Mot. 4; Pet'r's Mem. in Support 10-11.)  Specifically, petitioner asserts that Government agents testified to a statement made by Gonzalez in which he implicated petitioner in the conspiracy and that this testimony violated petitioner's Confrontation Clause rights.  (Pet'r's Mem. in Support 11.)

The trial record reveals that the only statement by Gonzalez used at trial was the proffer statement which was introduced by petitioner's trial counsel on his behalf.  Petitioner does not identify any Government agents who allegedly testified to a statement made by Gonzalez which implicated petitioner in the methamphetamine conspiracy, and there is no such evidence in the trial record.  Thus, petitioner's claim that his Confrontation Clause rights were violated by the introduction of a statement by Gonzalez cannot succeed.

### 3.        Ineffective Assistance of Counsel

Petitioner asserts a claim of ineffective assistance of counsel based on his trial counsel's failure to move to suppress Gonzalez's statements or to object to their introduction at trial. (Mot. 7; Pet'r's Mem. in Support 12.)  However, as explained above, the only statement by Michael Gonzalez used at trial was the proffer statement introduced by petitioner's counsel in his defense.  (Tr. 6/18/03 156-59; Tr. 6/19/03 34.)  Thus, a claim of ineffective assistance of

counsel based on trial counsel's failure to move to suppress Gonzalez's statements or to object to their introduction at trial is without merit.

### C.   <u>Evidence Claims</u>

#### 1.   **Ineffective Assistance of Counsel - Drug Testing**

Petitioner claims that his trial counsel, Joyce Webb-Eubanks, was ineffective in that she (1) did not seek to have the drug evidence seized from petitioner's vehicle at the time of his arrest tested by an independent laboratory to determine if the substance contained methamphetamine, and if so, what type, and (2) failed to require the Government to call the chemist who tested the methamphetamine as a witness, rather than stipulating to the testimony. (Mot. 4-5; Am. Mem. in Support 6.)  At the base of these claims is petitioner's assertion that the chain of custody was broken with respect to the drug evidence, which should have prompted trial counsel to challenge the evidence in some way.  (Pet'r's Mem. in Support 15; Tr. 11/29/07 60-61.)

In support of this ineffective assistance of counsel claim, petitioner first asserts that the "Prosecution[']s evidence was deficient" because the Government's chemist, Cheryl Gardner, did not specify in her report "what type of testing method she used to determine that the substance contained Methamphetamine." (Mot. 5.)  Based on this deficiency in the report and the fact that petitioner believes only empty plastic bags, not drugs, were produced at trial, petitioner asserts that trial counsel should have required Ms. Gardner to testify at trial, rather than stipulating to her testimony.  (<u>Id.</u>; Tr. 11/29/07 50-51.)   Further, petitioner testified at the November 29, 2007 evidentiary hearing that he never agreed to stipulate to the chemist's findings and wanted to challenge the drug evidence at the time of trial.  (Tr. 11/29/07 50-51.)

15

Similar to his assertions regarding the stipulation, petitioner testified that trial counsel was ineffective for failing to have the drug evidence independently tested because he believes independent testing would have proven that his assertion that the Government did not have any drug evidence, only plastic bags.  (Id. 68.)  In support of these assertions of ineffective assistance of counsel, petitioner alleges that the chain of custody of the drug evidence was broken.  Specifically, petitioner asserts that unidentified postal agents introduced a sham substance into the methamphetamine prior to the controlled delivery of the drug package and the evidence being sent to the Postal Inspection Service laboratory for analysis, and that this alteration broke the chain of custody.  (Pet'r's Mem. in Support 15.)  As further evidence of a broken chain of custody, petitioner points out that while Postal Inspector Juanita Waters testified at trial that she sent eight bags of evidence to the laboratory for analysis, the chemist's report described nine bags of evidence.  (Tr. 11/29/07 66.)

At the evidentiary hearing on November 29, 2007, Joyce Webb-Eubanks testified that she agreed to stipulate to the chemist's testimony because petitioner had already admitted to her that the confiscated substance was methamphetamine.  (Tr. 11/29/07 131.)  Accordingly, she said she had no reason to question the stipulation and the proposed testimony.  (Id.)  She explained that she discussed the stipulation and its impact with petitioner prior to the commencement of the trial, including the fact that it would expedite the trial, and he signed the stipulation.  (Id. 128-29.)  The fact that petitioner had admitted to her that he knew the package contained methamphetamine also explained her decision not to have the drug evidence tested by an independent laboratory.  (Id. 134.)  Ms. Webb-Eubanks knew of no issues regarding the chain of custody of the drug evidence.  (Id. 130.)  Finally, she testified that she had an opportunity to

examine the drug exhibit prior to its admission into evidence at trial and that the exhibit contained drugs, not empty plastic bags.  (Id. 132.)

Cheryl Gardner, the forensic chemist from the United States Postal Inspection Service's laboratory in Virginia who analyzed the drug evidence seized from petitioner's vehicle at the time of his arrest, also testified at the November 29, 2007 evidentiary hearing.  Ms. Gardner testified in detail concerning Government Exhibit 5, her laboratory report summarizing her findings after analysis of the materials seized from petitioner, which composed Government Exhibit 1 (G-1).  She explained that when she received the drug evidence, G-1, the package was accompanied by a letter from Postal Inspector Waters, Government Exhibit 4 (G-4), which described the contents of G-1 and requested an analysis.  (Tr. 11/29/07 190-95.)  The letter requested analysis of two "exhibits" of drug evidence, FZ-4 and FZ-5.  According to Ms. Gardner, FZ-4 was described in G-4 as "eight (8) bundles inside clear Baggies containing a white powdery substance believed to be methamphetamine."  (Id. 195.)  G-4 described FZ-5 as "one (1) small bundle wrapped in clear plastic wrap with an unknown substance."  (Id.)  Ms. Gardner testified that FZ-4 contained eight regular-sized bags filled with the white powdery substance and a smaller bag labeled 8-A, which was inside the eighth bag.  (Id.)  She explained that she treated bag 8-A differently than the other bags in FZ-4 because it "looked a little different" from the other bags of evidence in the exhibit.  (Id. 209.)

Ms. Gardner described the testing methods she used (mass spectrometer and infrared analysis) and the results of her analysis, specifically, that each of the eight larger bags in FZ-4 was found to contain D-methamphetamine hydrochloride and dimethyl sulfone, as was bag 8-A, and the bag in FZ-5 was found to contain dimethyl sulfone, a cutting agent.  (Id. 199-200, 214-

15.)  She explained that she included all of her findings in the laboratory report, Government

Exhibit 5 (G-5).  (Id. 204-06.)  Ms. Gardner also explained that after completing her analysis,

she repackaged the materials and sent them back to Postal Inspector Waters along with her

laboratory report (Government Exhibit 5 (G-5)).  (Id. 204.)   Finally, Ms. Gardner confirmed that

the stipulation read at petitioner's trial was an accurate statement of what her testimony would

have been had she testified at trial.  (Id. 201.)

Detective Timothy King of the Philadelphia Police Department also testified at the

evidentiary hearing on May 12, 2008.  First, Detective King described his participation in the

execution of the search warrant for the package containing methamphetamine.  Detective King

testified that he was present the entire time from when the package was opened through the time

when the tubes were opened and examined.  (Id. 50.)  He identified photographs depicting the

entire process of opening the package (Government Trial Exhibits 4 through 4-o).  (Tr. 5/12/08

35-38.)  According to Detective King, he, Postal Inspector Waters, and Dean Filari were present

when the package was opened, but Inspector Waters exited the room once one of the tubes of

methamphetamine was opened because she was pregnant and was worried about the effect of the

fumes on her unborn child.  (Id. 38-39.)

Detective King further testified that he removed 15 grams of the methamphetamine from

one of the eight bags for use in a controlled delivery.  (Id. 39.)  He explained that after the 15

grams were removed for use in the controlled delivery, another agent introduced a cutting agent

to the package with the 15 grams and the sham substance (flour).  (Id. 51-52.)  He explained that

he turned over all of the methamphetamine to Inspector Waters because she was the case agent,

and thus in control of the evidence during the investigation.  (Id. 40.)

Detective King also testified that he had been shown Government Exhibit 1 at trial, that he was shown the same exhibit at the hearing on May 12, 2008, and that it contained the drug evidence seized in the execution of the search warrant.  (Id. 43-44.)  He explained that G-1 was a large clear plastic bag with smaller clear plastic bags inside.  He stated that the smaller bags contained a white powdery substance (methamphetamine), and that the 15 grams which the agents removed for use in the controlled delivery of the package were part of the exhibit.  (Id. 43-44.)  Detective King identified the bag in G-1 (and in FZ-4 within G-1) containing the 15 grams removed for the controlled delivery as the bag marked 8-A and the bag in G-1 composing FZ-5 as the bag containing the "crystalline-type" methamphetamine.  (Id. 54, 59-60.)

Finally, Postal Inspector Juanita Waters testified at the evidentiary hearing on May 12, 2008, about her role in the investigation.  She stated that she obtained and participated in the execution of the search warrant for the drug package on June 26, 2002.  (Id. 63-64.)  Consistent with Detective King's testimony, she explained that she left the room once one of the tubes with the methamphetamine was opened because she was pregnant.  (Id. 65.)  She also stated that after opening and examining the bags of methamphetamine, Detective King brought her the contents of the 8 bags (the methamphetamine) resealed, as well as the 15 grams removed for the controlled delivery in a separate bag (making nine bags), and the knotted bag with the unknown substance (for a total of ten bags).  (Id. 65-66.)  She next explained how she prepared the package for the controlled delivery, making sure the weight was the same, marking the tube containing the 15 grams of methamphetamine with a dot, and keeping the 15 grams in a separate bag so as to avoid contaminating the substance.  (Id. 67-69.)

19

Postal Inspector Waters then testified about her role in the controlled delivery on June 27,
2002, of the package containing 15 grams of methamphetamine and the sham substance in
caulking tubes.  Postal Inspector Waters explained that she posed as a letter carrier to deliver the
package and that, during the controlled delivery, the remainder of the seized substances were
back in a safe in her office.  (Id. 70-71.)  After the controlled delivery, Postal Inspector Waters
next saw the caulking tubes when the Geo Metro, driven by petitioner when he left the scene of
the controlled delivery and at the time of his apprehension, was brought to 30th Street Station in
Philadelphia, Pennsylvania.  (Id. 40-42, 71.)  At that time, she observed the caulking tubes in the
back seat of petitioner's vehicle and asked Inspector Nowelski to make sure that the tubes were
returned to her possession.  (Id. 72.)  Once she received the tubes, she recovered the bag with the
15 grams of methamphetamine and taped it to bag 8, the bag from which the 15 grams were
taken.  (Id.)

Inspector Waters also testified about preparing the package for submission to the
laboratory for testing and mailing the package to the laboratory with a Request for Analysis
letter (G-4).  (Id. 77-84.)  She explained that FZ-4 consisted of eight bags, plus a smaller bag
attached to bag 8, which contained the 15 grams of methamphetamine removed for the
controlled delivery and FZ-5 consisted of one bag of a crystalline substance.  (Id. 77-79.)  She
stated that when she the laboratory returned the evidence to her along with the chemist's report
(G-5) after completion of the analysis, Senior Forensic Chemist Cheryl Gardner had labeled the
small bag with the 15 grams "8a."  (Id. 84-89.)  According to Postal Inspector Waters, she
returned the unopened drug evidence to a high value safe, where it has remained, except for
times when she needed to produce the evidence in court for petitioner's trial and the evidentiary

20

hearing on the habeas motion.  (Id. 86, 88, 90.)  Postal Inspector Waters stated that G-1 was the same exhibit she brought to the trial and to the evidentiary hearing on November 29, 2007 and May 12, 2008.  (Id. 90.)

The Court credits the testimony of Ms. Webb-Eubanks and the government agents with respect to the drug evidence, and does not credit petitioner's testimony on this issue.  Thus, the Court rejects petitioner's claim of ineffective assistance of counsel with respect to Ms. Webb-Eubanks's decisions (1) not to have the drug evidence seized from petitioner's vehicle at the time of his arrest tested by an independent laboratory to determine if the substance contained methamphetamine, and if so, what type, and (2) to stipulate to the testimony of the Government chemist who tested the methamphetamine, rather than requiring the Government to call her as a witness.  (Mot. 4-5; Am. Mem. in Support 6.)

First, the Court concludes that the testimony of Postal Inspector Waters, Detective King, and Postal Inspection Service forensic chemist Cheryl Gardner confirms that the chain of custody of the drug evidence was never broken.  The testimony of Postal Inspector Waters and Ms. Gardner resolves the question of inconsistent numbering of the bags of drug evidence - Ms. Gardner added the designation 8-A to one of the bags in FZ-4, such that she counted nine bags in FZ-4, plus the one bag in FZ-5, for a total of ten bags.  (Tr. 11/29/07 195; 5/12/08 77-79.)  Postal Inspector Waters's testimony establishes that the methamphetamine seized from petitioner was never mixed with the sham substance (flour) used in the controlled delivery, and thus, the evidence was not "tainted" as alleged.  (Tr. 11/29/07 67-69.)  Further, Ms. Gardner's testimony establishes that the evidence seized from petitioner contained methamphetamine.  (Id. 199-200, 214-15.)  Finally, the Court concludes, based on the testimony of Ms. Webb-Eubanks, Detective

King, and Postal Inspector Waters that the drug evidence seized from petitioner's vehicle was produced and admitted in evidence at petitioner's trial.  (Tr. 11/29/07 132; Tr. 5/12/08 43-44, 90.)

Because the Court concludes that the drug evidence seized from petitioner was properly handled and, upon testing, was found to contain methamphetamine, petitioner cannot show any prejudice from Ms. Webb-Eubanks's decisions (1) not to have the drug evidence seized from petitioner's vehicle at the time of his arrest tested by an independent laboratory to determine if the substance contained methamphetamine, and if so, what type, and (2) to stipulate to the testimony of the Government chemist who tested the methamphetamine, rather than requiring the Government to call her as a witness.  Thus, petitioner cannot succeed on an ineffective assistance of counsel claim based on these decisions by Ms. Webb-Eubanks.  <u>Strickland</u>, 466 U.S. at 688**.**

> **2.      Ineffective Assistance of Counsel for Failure to "Challenge" the Government's Evidence - Failure to File Motion to Suppress or Motion to Dismiss**
>
> **a.      Drug Evidence**

Petitioner asserts that his trial counsel, Ms. Webb-Eubanks, was ineffective for failing to file a motion to suppress the drug evidence or a motion to dismiss based on the fact that the Government did not admit the drug evidence at trial.  (Mot. 5-6.)  However, as stated above, the testimony of the government agents establishes that the drug evidence seized from petitioner was properly handled and, upon testing, was found to contain methamphetamine.  Because petitioner had already admitted to Ms. Webb-Eubanks that he knew the package contained methamphetamine and there were no problems with the chain of custody or testing of the

evidence, it was not objectively unreasonable for Ms. Webb-Eubanks not to file a motion to suppress the evidence. Strickland, 466 U.S. at 687-88; Tr. 11/29/07 130-31, 134. Further, petitioner cannot demonstrate any prejudice from Ms. Eubanks's decision not to file a motion to suppress the drug evidence because, given the propriety of the admission of the evidence, such a motion would have failed. Strickland, 466 U.S. at 688. Thus, petitioner cannot succeed on an claim of ineffective assistance of counsel based on that decision by Ms. Webb-Eubanks.

Further, as also stated above, the testimony of Ms. Webb-Eubanks, Detective King, and Postal Inspector Waters establishes that the drug evidence seized from petitioner's vehicle was produced and admitted in evidence at petitioner's trial. (Tr. 11/29/07 132; Tr. 5/12/08 43-44, 90.) As such, petitioner cannot demonstrate either that Ms. Eubanks's representation "fell below an objective standard of reasonableness" for failing to "move to dismiss" the case under a theory that the evidence was not produced at trial. Strickland, 466 U.S. at 687-88; Mot. at 5-6. Thus, petitioner's claim of ineffective assistance of counsel for failure to "move to dismiss" the case is denied.

### b.    Non-Drug Evidence

In addition to arguing that trial counsel was ineffective for failing to file a motion to suppress the drug evidence or to dismiss the case based on the deficiencies of this evidence, petitioner asserts that trial counsel was ineffective for failing to file a motion to suppress the non-drug evidence or to cross-examine Postal Inspector Waters regarding this evidence. (Mot. 6-7; Pet'r's Mem. in Support 15.) The non-drug evidence at issue in this claim consists of the photographs of the packaging materials which contained the drug evidence mailed to, and seized from, petitioner. (Pet'r's Mem. in Support 15.) As explained by petitioner at the evidentiary

23

hearing on November 29, 2007, he contends that because the Government produced only photographs of the packaging materials, and not the packaging materials themselves, trial counsel should have questioned Postal Inspector Waters about the missing physical evidence and moved to suppress the evidence.  (Tr. 11/29/07 64-65.)

At the November 29, 2007 evidentiary hearing, Ms. Webb-Eubanks testified that she did not object to the admission of the photographs of the packaging materials in lieu of the materials themselves because a foundation was laid for the photographs and petitioner never expressed any objection to having the photographs moved into evidence.  (Tr. 11/29/07 133-34.)

Postal Inspector Waters testified at trial and at the evidentiary hearing on May 12, 2008 that, to the best of her knowledge, the caulking tubes and other packaging materials were lost while she was on maternity leave.  (Id. 99-100; Tr. 6/18/03 at 126-27, 154-55.)  She explained that when the items were returned from the Postal Inspection laboratory after analysis for fingerprints, the items were stored in her office.  (Tr. 5/12/08 99.)  She noted that she gave the packaging evidence to Inspector Pete Medina (who was in charge of handling questions on the case in her absence) when she went on maternity leave, but that he could not recall what happened to it.  (Id. 99-100.)  She further testified that the packaging materials were photographed when first seized on June 26, 2002, and that these photographs were produced and admitted at trial.  (Id. 100.)

The photographs of the non-drug evidence were admitted in evidence at trial after proper authentication by Detective King, who participated in the opening of the package.  (Tr. 6/17/03 115-20.)  As she stated in her evidentiary hearing testimony, Ms. Webb-Eubanks had no reason to object to the admission of the photographs.  (Tr. 11/29/07 133-34; see also People of Territory

of Guam v. Ojeda, 758 F.2d 403, 407 (9th Cir. 1985) (photographs of physical evidence admissible at trial; admission of physical evidence itself not required)).  Thus, in not objecting to the admission of the photographs or filing a motion to suppress the evidence, Ms. Webb-Eubanks's representation of petitioner did not fall "below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.  Thus, petitioner cannot succeed on an ineffective assistance of counsel claim based on Ms. Webb-Eubanks's decision not to file a motion to suppress or otherwise challenge this evidence.  Id.

## IV.   CONCLUSION

For the foregoing reasons, petitioner Francisco Zavala's *pro se* Motion under 28 U.S.C. § 2255 to Vacate and Set Aside Judgment of Conviction is denied, except to the extent that it raises a claim of cruel and unusual punishment in violation of the Eighth Amendment and punishment without due process of law in violation of the Fourteenth Amendment for refusal of medical treatment and inadequate medical treatment.  The claim for refusal of medical treatment and inadequate medical treatment is dismissed without prejudice.  A certificate of appealability will not issue on the ground that petitioner has not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).


                                        BY THE COURT:


                                         /s/ Honorable Jan E. DuBois
                                            JAN E. DUBOIS, J.